CAROLINE A. HICKOK, as Executrix of CHAUNCEY L. HICKOK, Deceased, Respondent, v. AUBURN LIGHT, HEAT AND POWER COMPANY, Appellant.

**Negligence — appeal — duty of Court of Appeals as to examination of the evidence when decision of Appellate Division, affirming judgment for plaintiff in action for negligence, is not unanimous — when electric light company not liable for death of person killed by electricity while changing electric light bulbs — contributory negligence.**

Where, in an action for negligence, the decision of the Appellate Division, affirming a judgment for plaintiff, is not unanimous, it is the duty of the Court of Appeals to search the record to see if there is any evidence to support the finding of negligence against the defendant · and of freedom from contributory negligence in favor of the plaintiff; and if there is such evidence, the judgment must be affirmed. If there is an absolute failure of evidence upon either of these essential features of the case, the judgment must be reversed.

An electric light company agreed to furnish light and power to the public buildings of a county under a written contract which contained a' provision that the company "shall furnish at its own expense all incandescent bulbs now installed in said buildings, * * * and will furnish new incandescent bulbs of equal candle power with those now installed on presentation of any burned-out bulb delivered at its office in North street, and taken from the present equipment of said county or from any equipment hereafter installed. Said company will keep on duty a watchful force of inspectors and repair men." The company erected in the courtyard, surrounded by the courthouse and other county buildings, an electric light pole to which electricity was conveyed by wires carrying high tension currents of electricity. From this pole, electricity was distributed through other wires, carrying lesser currents, to the various county buildings. In a lamp at the top of the pole there was an incandescent bulb of low candle power for lighting the courtyard. While climbing up through the network of wires surrounding the pole, in an attempt to change the bulbs, the plaintiff's intestate, a deputy sheriff, received a shock of electricity which caused his death. A test made after the accident showed that there was a leakage of electricity from the high tension wires, due to defective insulation. The bulb at the top of the pole was not burned out, and gave light at the time of the accident and for some months thereafter. *Held*, that the company was not liable for the death of decedent; that he was not authorized, or at least not required, to climb the pole into the place of danger where he met his death; and that he was a volunteer,

if not a trespasser, to whom the defendant owed no duty to keep the wires at the top of the pole safe and free from danger.

Decedent was familiar with electric installations in and about the county buildings, and must be presumed to have had the average knowledge of electric wiring and its dangers. He knew that this pole was surmounted by a network of wires, some of which carried a very powerful current of electricity. Under such circumstances, he was not free from contributory negligence.

*Hickok* v. *Auburn Light, Heat & Power Co.*, 136 App. Div. 907, reversed.

(Argued January 10, 1911; decided January 27, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 14, 1909, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William H. Harding* for appellant. The deceased was a trespasser, or, at best, a bare licensee upon defendant's pole, and the defendant owed him no duty to keep the wires at the top of the pole insulated or the transformer in perfect condition. (*Freeman* v. *B. H. R.R. Co.*, 54 App. Div. 596; *Downes* v. *Elmira Bridge Co.*, 179 N. Y. 136; *Larmore* v. *C. P. Iron Co.*, 101 N. Y. 391; *Nicholson* v. *Erie Ry. Co.*, 41 N. Y. 525; *Racine* v. *Morris*, 136 App. Div. 467; *McAlpin* v. *Powell*, 70 N. Y. 126; *Splittorf* v. *State of N. Y.*, 108 N. Y. 205; *Victory* v. *Baker*, 67 N. Y. 366; *Lagerman* v. *N. Y. C. R. R. Co.*, 53 App. Div. 283; *Birch* v. *City of New York*, 190 N. Y. 397; *Eckes* v. *Stetler*, 98 App. Div. 76.) Defendant was only bound to guard against such risks as it should reasonably anticipate the public would encounter and it could not anticipate deceased or any other employee of the county would come in contact with the wires on this pole. (*Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 1; *Farley* v. *White Engineering Co.*, 131 App. Div. 228; *Hordern* v. *Salvation Army*, 124 App. Div. 674; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Byrne* v. *N. & W. C. Co.*, 46 App. Div.

30

479; *G. F. P. C. Co.* v. *Travelers' Ins. Co.*, 162 N. Y. 399; *Kern* v. *DeC. & D. S. R. Co.*, 125 N. Y. 50; *Brush E. L. & P. Co.* v. *Lefever*, 93 Tex. 604; *Favro* v. *T. & W. T. Bridge Co.*, 4 App. Div. 241; *Creswell* v. *U. S. & C. Co.*, 115 App. Div. 12.) Not only has plaintiff failed to show deceased free from contributory negligence, but also upon the entire evidence it clearly appeared affirmatively that deceased was guilty of negligence which contributed to or was the sole cause of the accident. (*Baxter* v. *A. & S. E. R. R. Co.*, 190 N. Y. 439; *Wieland* v. *D. & H. C. Co.*, 167 N. Y. 19; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *Gallagher* v. *N. Y. C. Ry. Co.*, 124 App. Div. 868.)

*Hull Greenfield* for respondent. Defendant did owe a duty to plaintiff's testator to guard against accidents and the deceased was no trespasser. (*Wagner* v. *B. H. R. Co.*, 74 N. Y. Supp. 809; *Fox* v. *Manchester*, 183 N. Y. 150; *Connors* v. *G. N. E. Co.*, 90 App. Div. 311; 180 N. Y. 509; *Caglione* v. *Mt. Morris Co.*, 56 App. Div. 191.) Deceased was not guilty of contributary negligence as matter of law. (*Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Witmer* v. *B. & N. F. Co.*, 112 App. Div. 698; *Murphy* v. *H. R. T. Co.*, 127 App. Div. 450; *Moorehead* v. *Richmond Co.*, 111 App. Div. 535.)

Werner, J. In June, 1908, the plaintiff's testator was a deputy sheriff of Cayuga county, and the defendant was furnishing electric light for the courthouse and other adjacent county buildings in the city of Auburn. In a small square or courtyard, which was flanked on the north by the courthouse, on the south by the jail, on the west by the county clerk's office, and on the east by the county stable, there was an electric-light pole about thirty feet in height, surmounted by a frame and hood originally equipped with an arc lamp, but in June, 1908, containing a single sixteen-candle power incandescent bulb which was used in lighting the courtyard. In that month the sheriff had a conversation with the plaintiff's

testator about the insufficiency of the light on that pole, and the suggestion was made that if the latter would find a thirty-two-candle power bulb, the former would attach it to the lamp at the top of the pole. No such bulb was to be found upon the premises and the sheriff thereupon instructed plaintiff's testator to get one and put it on. Such a bulb was later procured and the decedent was engaged in trying to put it on when he met his death under circumstances which clearly indicate that it was caused by a shock of electricity. The plaintiff, proceeding upon that theory, brought this action, the complaint charging the defendant with negligence in maintaining upon this pole several high tension wires and a transformer which had been carelessly and improperly arranged and connected, without sufficient insulation, thus permitting a dangerous current to escape with which the decedent came in contact while engaged in the work of changing or removing the bulb in the lamp at the top of the pole.

The defendant, in its answer, joined issue on the charge of negligence against it, and asserted that the decedent's own negligence was the cause of his death. Thus far the plaintiff has succeeded in convincing the courts and jury that the defendant was guilty of actionable negligence which caused the decedent's death, and that the latter was free from any negligence which contributed thereto. Since the judgment of the Appellate Division was not unanimous, it is our duty to search the record to see if there is any evidence to support the finding of negligence against the defendant and of freedom from contributory negligence in favor of the plaintiff, and if there is such evidence, the judgment must be affirmed. Of course, the logical corollary of this statement is that if there is an absolute failure of evidence upon either of these essential features of the case, the judgment must be reversed. We think the plaintiff has failed upon both points and that the judgment cannot stand. A somewhat more extended and critical survey of the facts will disclose the reasons for this view.

The defendant, a corporation engaged in producing and

selling electric light, had a contract with the county of Cayuga for the furnishing of light and power to the courthouse and other public buildings in the city of Auburn. For the purpose of carrying out this contract the defendant had erected the pole referred to in the courtyard, surrounded by the courthouse and the other county buildings above described. This pole, as we have observed, was surmounted by a frame and hood which had been originally used for an arc lamp, but the lamp had been removed and an incandescent bulb put in its place. Below the lamp frame there were two crossarms, one extending north and south and the other east and west. The upper, or north and south crossarm, held six pins and insulators, three of which were on the north side of the pole and the other three on the south. The wires attached to the two insulators farthest from the pole on either side were secondary wires carrying 110 volts for service purposes. The two wires nearest to the pole on the north half of the upper crossarm carried 500 volts, which were used to operate an electric ventilating fan in the courthouse. The two wires nearest the pole on the south half of this upper crossarm were primary wires, which carried 2,000 volts. These wires all extended westerly from the pole, but not easterly. On the lower crossarm which, as we have seen, extended easterly and westerly from the pole and at right angles with the upper crossarm, there was a transformer which was suspended on two iron brackets or braces, and there were also six wooden insulator pins. The pin nearest the pole on the east half of this crossarm had no insulator or wire attached. The second pin on the east side had a heavily insulated secondary wire running northerly to the courthouse. From the pin on the extreme east end of this crossarm there extended a wire running southerly to the jail, and the west half of this crossarm carried wires to the jail and county clerk's office. From the arc frame, which was above both of these crossarms, there were two wires running easterly to the stables. From this description it is evident that the only wires running in an easterly direction from the pole were the two extending from

the frame of the arc lamp to the stables. These two wires were apparently so much higher than the others, and were so placed, as to give a clear, open space of 30 to 32 inches in width and about 4 feet in length on the east side of the pole between the crossarm and the wire running nearest to it. This was the physical situation when the decedent ascended the pole.

The only witness who saw him ascend was a mail carrier, who testified that the decedent placed a ladder against the east side of the pole, went to the top of the ladder, where he turned to the south side of the pole, and climbed upward as far as he could on the iron steps or braces which had been driven horizontally into the pole, and then he turned over to the west side, stepping over a telephone wire or guy wire until his shoulders were above and between the wires on the two crossarms which have been described, and he was reaching upward toward the lamp frame trying to reach the bulb or globe when he gave a startled cry and fell to the ground. The medical testimony warranted the conclusion that the decedent had received an electric shock of sufficient intensity to cause his death, and several electrical experts were called, who testified that after the accident they made a magneto test of the wires and found a leakage in one of the high power wires near the transformer, probably due to an untaped or unwound connection, and a loose cover on the transformer box. Upon this branch of the case it is sufficient to say that if the defendant owed to the plaintiff's testator the duty to keep these high tension wires at the top of this thirty-foot pole free from leakage of electricity, there was evidence from which the jury could have found that the defendant was negligent.

That is, however, one of the vital questions in the case. What duty did the defendant owe the decedent? The latter was a deputy sheriff and the former had a contract with the county to light these public buildings. In the written contract there is a stipulation that the defendant "shall furnish at its own expense all incandescent bulbs now installed in said

buildings, * * * and will furnish new incandescent bulbs of equal candle power with those now installed on presentation of any burned out bulb delivered at its office in North street, and taken from the present equipment of said county or from any equipment hereafter installed. Said company will keep on duty a watchful force of inspectors and repair men." It is contended for the plaintiff that the foregoing excerpt from the contract contains the only agreement respecting the defendant's duty in the matter of installing or exchanging bulbs, and that under it the defendant was not obliged to remove the burned-out bulbs or to replace them with fresh ones; that this duty devolved upon the county; and, therefore, the sheriff or his deputy had not only the right, but were charged with the duty of attending to that detail. On behalf of the defendant it is claimed that it had been orally agreed between its representative and the county officials that the defendant should remove from the county buildings all burned-out bulbs and replace them with new ones when necessary. There was evidence to support this latter contention for the defendant, and the learned trial court charged the jury that, if that was the contract, the plaintiff could not recover, for in that view of the case the plaintiff had no right to ascend the pole for the purpose of making an exchange of bulbs. We think that even under the written contract the decedent was not authorized, or at least not required, to ascend this pole under the circumstances. The uncontradicted testimony is that the bulb at the top of the pole had not been burned out; that it was giving light both before the accident and for a number of months after that. It is to be noted, moreover, that in the clause of the contract referred to there is no special reference to this pole, and it does not follow that because the employees of the county may have been charged with the duty of removing and replacing bulbs within the buildings, there was any corresponding duty as to the light on this pole, surrounded as it was by a network of dangerous wires. The record is barren of evidence to indicate what the custom had been in looking after the bulbs within the buildings, and if

the plaintiff relied upon the previous usage to justify the conduct of her testator, that should have been affirmatively established as part of her case.   Even such proof would fail to justify the assumption that the intestate was called upon or authorized to climb into the place of danger where he met his death.   As the case stands, therefore, the decedent was a volunteer, if not a trespasser, to whom the defendant owed no duty to keep the wires at the top of the pole safe and free from danger.   (*Hector* v. *Boston Electric Light Co.*, 161 Mass. 558; *Birch* v. *City of New York*, 190 N. Y. 397; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; *Larmore* v. *Crown Point Iron Co.*, 101 id. 391, 393.)   A very different situation would have been presented if, by defendant's negligence in placing these wires or by a lack of care in maintaining them, the pole had become pervaded with electricity so near the ground as to injure the decedent while engaged in the lawful use of the courtyard.   But that is not this case.   The decedent, under the circumstances disclosed by the evidence, had no more right at the top of this pole than the county clerk or any other county official or employee would have had, and the correlative of this proposition is that the defendant owed neither him nor them any duty to keep the wires at the top of this pole in a safe condition.

The failure of the plaintiff to prove her testator's freedom from contributory negligence is even more marked than her inability to establish actionable negligence on the part of the defendant.   It is not going beyond the boundaries of the proof to say that the plaintiff's affirmative case conclusively established her testator's own negligence.   Assuming, for the purposes of the discussion, that he had the right or was charged with the duty to replace the bulb at the top of the pole, the fact remains that he was a man of sufficient intelligence to serve as deputy sheriff, which office he had held for several years prior to his death.   He was familiar with electrical installations in and about the county buildings, and must be presumed to have had the average knowledge of electric wiring and its dangers.   He knew that this pole was sur-

mounted with a network of wires, some of which carried a very powerful current of electricity. Ordinary prudence should have suggested to him the necessity of reaching the top of the pole without coming into contact with these wires if that could be done, or, if that were impossible, of having the current turned off while he essayed to make an exchange of bulbs. The evidence clearly shows that he observed neither of these simple precautions. According to the testimony of the only witness who saw him ascend the pole he drew himself up in a position where his body was surrounded with these wires, and where contact with one or more of them was almost inevitable.

Upon this record the defendant's motion for a nonsuit should have been granted, and the exception taken to the ruling in this behalf necessitates a reversal of the judgment and the granting of a new trial, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.