[No. 21590. Department One. May 9, 1929.]

KNOWLES BLAIR, *Appellant*, v. KINEMA THEATRES OF WASHINGTON, INCORPORATED, *et al., Respondents.*[1]

[1]Reported in 277 Pac. 398.

*Ryan, Desmond & Ryan,* for appellant.

*Roberts, Skeel & Holman,* for respondent Kinema Theatres of Washington.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent Universal Film Exchange.

BEALS, J.—Plaintiff was, during the month of June, 1925, in the employ of defendants, who were operating a motion picture house, as their publicity director. In the course of his activities, plaintiff conceived the idea of placing a picture of the particular actress whom his house desired to feature, in the center of a large star to be erected on the roof of the theatre. The star having been placed in position just in time for the opening of the play which it was intended to advertise, it was discovered late in the evening that, because of some lighting effects on an adjoining building, the scheme was ineffective. Plaintiff believed that, by changing the position of the star on the roof of the theatre, he could produce the result which he desired, and he explained the situation to the manager of defendants' business, and urged that the position of the star be immediately changed. The manager consented, provided that a Mr. Gunther, whose business it was to

perform mechanical work in and about the theatre, should go to the roof with plaintiff. Thereupon plaintiff suggested the matter to Mr. Gunther, who reluctantly consented to give it his attention. Plaintiff, accompanied by his cousin, who volunteered to assist, went to the roof of the theatre, access to which was gained through a trap door toward the rear of the building.

About the center of the roof, stood a "fan house" approximately ten feet high by eight feet in width, solidly enclosed on three sides and the top. This construction housed a fan, approximately six feet in diameter, composed of metal blades, which, revolving at a high rate of speed, assisted in the proper ventilation of the theatre. The fourth side of the fan box, which the fan faced, was not enclosed, but was guarded to some extent by horizontal and vertical metal rods approximately an eighth of an inch in thickness. The apertures formed by the intersecting bars varied somewhat in size, but averaged approximately a foot square. The metal rods served the purpose of preventing a curtain, which was, during bad weather, placed over the open side of the fan house, from becoming entangled in the blades of the fan.

Plaintiff testified that, as he and his cousin went upon the roof of the theatre, it was very dark, and that Mr. Gunther did not accompany plaintiff, but remained below stairs for a moment to procure some tools and appliances which he anticipated would be needed. Upon reaching the roof, plaintiff proceeded to the northerly side of the building to make certain observations, his cousin going immediately to the west front, where he started to take down the star for the purpose of changing its location. Plaintiff then walked westerly toward the front of the building. As he was passing the fan house, his left hand, in some

way, came in contact with the rapidly revolving blades of the fan, and was so badly injured as to necessitate its amputation. Plaintiff sued for damages for the injuries which he sustained, claiming that the fan was improperly guarded, and that, by reason of defendants' negligence in permitting such a dangerous situation to exist, he had been severely injured.

The action was tried to a jury, which returned a verdict for the defendants. From a judgment of dismissal entered upon this verdict, plaintiff appeals.

Appellant makes three assignments of error, each based upon the giving of an instruction. The first instruction of which appellant complains reads as follows:

"You are instructed that, if an employee chooses to step outside the sphere of his employment and to do something he is not expected or required to do, he does so at his own risk. In such case, he cannot hold the employer to the rule of furnishing him with a safe place to work, and under such conditions the employer cannot be held liable for injuries thus sustained unless the plaintiff has, by a preponderance of the testimony, proved that the defendant was guilty of wilful or wanton negligence."

Appellant urges that this instruction was erroneous, for the reason that there was no testimony in the case upon which the instruction could be based, and that, in any event, it was inapplicable and erroneous, for the further reason that appellant, at the time of his injury, was an employee, or at least an invitee, of respondents, and was not a trespasser or licensee, appellant contending that the instruction was predicated upon the theory that the jury might find thereunder that appellant came within one of the two classes last mentioned.

Appellant does not contend that it was his duty, under his employment, to do any of the manual or

mechanical work of readjusting the star, the position of which he thought should be changed. Appellant admits that the manager of the theatre consented to the star being moved at the time suggested by appellant, provided Mr. Gunther would go up to the roof with him and attend to the matter, and appellant also admits that he hastened to the roof in advance of Mr. Gunther, who did not start to ascend until after appellant was injured. Counsel for appellant contend that the proviso attached by the manager to the permission given to appellant to go upon the roof, to the effect that Mr. Gunther accompany appellant on the expedition, was nowise for appellant's protection, and that the fact that appellant hurried on in advance of Mr. Gunther is immaterial. The stipulation made by the manager was reasonable under the circumstances, and we cannot say that the jury attached any undue weight thereto. It was a fact to be considered, together with all other relevant evidence.

We deem the instruction complained of correct. Under the evidence, the jury might well have found that appellant voluntarily, prompted by zeal for the service of his employer, undertook to do something beyond and outside of the sphere of his employment unaided by the agent designated by respondents' manager to do the work, and if such was the case, he could not, in law, hold his employer to the rule which requires the employer to furnish his employee a safe place to work. We find no error in the instruction above quoted. *Eugene Dietzen Co. v. Industrial Board of Illinois,* 279 Ill. 11, 116 N. E. 684; *Stodden v. Anderson & Winter Mfg. Co.,* 138 Iowa 398, 116 N. W. 116; *National Fireproofing Co. v. Andrews,* 158 Fed. 294; *Hickok v. Auburn Light, Heat & Power Co.,* 200 N. Y. 464, 93 N. E. 1113; *San Francisco & S. R. Co. v. In-*

*dustrial Accident Commission,* 201 Cal. 597, 258 Pac. 86.

Appellant next assigns error upon the giving of the following instruction:

"If you find that plaintiff climbed or attempted to climb up the steel bars in front of the fanhouse in the darkness on the night in question, and that, while climbing, he slipped, causing the injuries complained of, and if you find the plaintiff knew, or by the exercise of reasonable care should have known, of the existence and operation of the fan and of the dangers attendant thereof, then he assumed the risk and all the dangers incident to such climbing in the proximity of the fan, and if such was the proximate cause of the injuries, plaintiff cannot recover."

Appellant denied that he had climbed, or attempted to climb, up the bars in front of the fan house. Three of the nurses who attended appellant shortly after the receipt of his injury testified concerning statements made by him as to the manner in which he was hurt. The first, in answer to a question as to what appellant stated he was doing at the time of his injury, stated:

"A. Well, I do not remember the details. He explained the details from the beginning about this telescope and the star; but I do not remember the details of that. The only thing that I remember is how the accident happened. He said he went on the roof, and he climbed up on the rail, and his foot slipped, and he went forward, and caught his hand in the fan. That is all I remember. Q. Did he say what kind of a rail it was? A. No, sir. Q. Did he say anything about where his foot was when he slipped? A. He just said it was on the rail."

The next, in replying to a question as to what appellant had said he was doing, said:

"A. He was looking for a place to put the star. Q. Did he say particularly what he was doing, or just how he happened to get hurt? A. Well, he was looking for a place to put the star and his foot slipped and his left hand was caught in the blade of the fan; and

he said, the first time that it hit his hand, it drew him in, and then it struck him the second time, and he reached into the fan with his right hand, and pulled it out, and he went down the ladder himself all alone. Q. What did he say, if anything, with reference to where he was at the time he was first struck? That is, what he was doing particularly? A. He said he was looking for a place to put the star. Q. Did he say anything as to where his foot was? Mr. Desmond: We object. She has answered the question. The Court: I think it is answered. Mr. Desmond: She has answered it. The Court: She may answer it again. A. I remember it only that he said his foot slipped and his hand went into the fan, and he felt the fan cut his hand.''

The third, in her reply to a similar question, answered:

''A. Climbing. Q. What did he say? Where was he climbing. A. He said he was on the roof, and it was dark, and he was climbing—and while he was climbing, he stuck his hand into the fan, and he realized at once what he had done, and with his right hand, he pulled his left hand out, and it was just mangled.''

In connection with this assignment of error, appellant cites the case of *Mitchell v. Barton & Co.*, 126 Wash. 232, 217 Pac. 993, in which case a judgment rendered in favor of the plaintiff for injuries received by coming in contact with an electric fan was affirmed. In the case cited, it appeared that the plaintiff Mitchell was employed by the Federal government as a sanitary inspector and, in the course of his duty, was examining one of the rooms of the packing plant operated by the defendant. While in the course of making his inspection, the damp condition of the floor caused him to slip, and his hand went into an electric fan, resulting in the injuries complained of. The fan was situated against one of the walls, the lower portion of the fan being about fifty inches above the floor. Two large vats usually occupied a place against, or near, the wall

under the shelf supporting the fan. Plaintiff testified that he was familiar with the room, and that, on the occasion of his injury, one of the vats had been moved from its usual position, and that he examined the wall and floor behind the vat and then, stepping back, raised his hand to test the volume of air being circulated by the fan, at which moment his foot slipped, with the result that his hand was projected into the revolving blades of the fan. All that was held in that case was that, under the circumstances, the questions presented by the pleadings and evidence were for the jury to determine. The case does not support appellant's contention that the instruction last cited was erroneous.

The testimony of the nurses above quoted was sufficient to go to the jury on the question of whether or not appellant did in fact place his foot on one of the bars in front of the fan house. Appellant denied that he did so, but whether or not he did became a question for the jury.

The question of respondent's liability to appellant was submitted to the jury and by it determined adversely to appellant's contention. Clearly, if the jury found that appellant climbed, or attempted to climb, up the steel bars in front of the fan house, under the circumstances as testified to by himself, it being at the time of the accident extremely dark, it was proper to instruct the jury that appellant assumed all dangers incident to his act. Appellant vigorously denied that he made any such attempt, but contended that, as he was passing the fan house, he tripped over something or his foot slipped, and that he threw out his left hand to protect himself, and that, because of his close proximity to the fan house, the hand came in contact with the blades of the fan.

The jury heard appellant's testimony and found

against him on the main issue of fact. The instruction complained of correctly stated the law and we find no error therein.

■ . In the last place, appellant contends that the court erred in instructing the jury as follows:

"You are instructed, members of the jury, that the plaintiff does not claim that the defendants were negligent in failing to light the roof, nor does he claim that his slipping upon said roof, if you find that he did slip, was due to any negligence upon the part of the defendants."

Appellant admits that he does not base any claim of negligence upon the fact that respondents had failed to light the roof, or that he slipped because of any dangerous condition of the surface thereof. Appellant contends that the condition of the roof, as to light and other material conditions, was important in determining the degree of care which respondents were required to exercise in putting guards around the open side of the fan house to protect persons going upon the roof from injury. As appellant did not contend that respondents were guilty of negligence in failing to light the roof, or that his slipping thereon, if he did slip as he said he did, was due to any negligence on the part of respondents, the instruction given was proper as eliminating from the consideration of the jury certain elements which, without such an instruction, they might have believed they were entitled to consider.

We conclude that the instructions of which the appellant complains, considered in connection with the other instructions given, correctly stated the law applicable to the facts to be determined by the jury, and that no one of appellant's assignments of error is well taken.

Judgment affirmed.

MITCHELL, C. J., FULLERTON, TOLMAN, and HOLCOMB, JJ., concur.