# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 10966.—Reversed and remanded.)

THE EUGENE DIETZEN COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants
in Error.

*Opinion filed June 21, 1917.*

1. WORKMEN'S COMPENSATION—*injury must arise out of and in the course of the employment.* It is not sufficient, under the Workmen's Compensation act, that the injury occurs "in the course of" the employment but it must also arise "out of" the employment, as these words are used conjunctively in the statute and the circumstances of the accident must come within both requirements.

2. SAME—*when injury arises out of the employment.* An injury arises "out of" the employment, within the meaning of the Workmen's Compensation act, when the accident results from a risk reasonably incidental to the employment.

3. SAME—*master is not liable for injury resulting from a duty undertaken by a servant as a volunteer.* Where a servant, voluntarily and without direction from the master and without his acquiescence, goes into hazardous work outside of his contract of hiring he puts himself beyond the protection of the master's implied undertaking and is not within the terms of the Workmen's Compensation act.

4. SAME—*word "volunteer" defined.* A volunteer is one who introduces himself into matters which do not concern him, and

does or undertakes to do something which he is not bound to do, which he has not been in the habit of doing with his employer's knowledge and consent, or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency.

5. SAME—*when an injury occurs in the course of the employment.* An injury occurs in the course of the employment, within the meaning of the Workmen's Compensation act, when it occurs within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of the employment or is engaged in doing something incidental to it.

6. SAME—*Workmen's Compensation act does not make the Industrial Board's legal conclusions binding upon the Supreme Court.* While the Industrial Board's findings of fact, under the Workmen's Compensation act, are conclusive on the Supreme Court, the legal conclusions of that board, based upon such findings, are subject to review, and if it is clear, upon the facts, that as a legal conclusion an injury was not accidental or that it did not arise in the course of the employment, a contrary conclusion awarding compensation will not be upheld.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

THOMAS C. ANGERSTEIN, (GEORGE W. ANGERSTEIN, of counsel,) for plaintiff in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Guiseppe Cappucio, while in the employ of plaintiff in error on July 15, 1914, sustained a serious injury to his right hand, for which he filed a claim before the Industrial Board. Upon hearing before the committee of arbitration an award was entered in his favor. On petition for review filed by plaintiff in error, the Industrial Board, without the introduction of additional evidence, entered an award in Cappucio's favor, requiring plaintiff in error to pay him five dollars a week for 112 weeks. The case was duly taken by *certiorari* to the circuit court of Cook county, which, after a hearing, affirmed the award of the Industrial Board,

the trial judge certifying that in his opinion the cause was one proper to be reviewed by this court. The case was thereafter brought here by writ of error.

Cappucio began work for plaintiff in error on June 27, 1914. He first worked at nickel-plating, but a few days before his injury was put to work on a buffing machine. This machine consisted of an upright stand, shaped somewhat like the letter T, along the top of which was a revolving spindle. At one end of the spindle was a soft buffing wheel and at the other end a hard buffing wheel. Cappucio was employed to work on the soft buff, his sole duty at the time being to polish small metal handles for tape lines, these handles being about three inches in size each way and shaped similar to a stirrup. His work was to take one of these metal pieces out of a box, hold it against the cloth buff and polish it and place it in another box. When one box was completed it was taken away and another box brought. Just below the buffing wheel at which he worked was a small box-like receptacle into which the dust from the work fell. The receptacle was supported by a tripod of three iron rods attached to the floor but was not in any way attached to or a part of the buffing machine. From this receptacle a pipe, something like a jointed stovepipe, led downward and away from the operator as he stood facing the machine, this pipe curving to connect with a larger exhaust pipe. This larger pipe in turn connected with a large case of sheet metal, which was fully enclosed and in which was a fan, a few feet distant from the buffing machine. The pipe connecting with the box-like receptacle could be detached from the exhaust system if by chance any piece of metal that was being polished should be accidentally dropped into it. There was a similar arrangement below the hard buffing wheel, connecting in the same manner with the exhaust system. Between the buffing wheel and the fan there was located on the top of the larger pipe an opening, covered by a tight cover. The only

proper way to get into the exhaust system near the fan was to take off this tight cover and reach down into the pipe and then over into the case in which the fan was located. The evidence shows, without contradiction, that the exhaust system was entirely separate from the buffing machine. This exhaust system was in charge of a special, responsible man for the purpose of cleaning and oiling, which work, the evidence tends to show, was done by this man on Saturday of each week. Before he began this polishing work Cappucio was instructed by another employee, Anders, an expert metal polisher of about nineteen years' experience. Anders testified that he told Cappucio his sole duty was to take the metal pieces and hold them against the buffing wheel; that he should not lift the cover and reach into the exhaust pipe. He testified that he instructed Cappucio, if anything went wrong, to notify him. Cappucio stated in his testimony that he had been instructed by Anders that if anything went wrong to come and see him, and that he had notified Anders on several occasions when things went wrong. Cappucio knew that the exhaust system was to carry away the dust and dirt, and there was a loud noise made in the case, so it is argued he must have known that a fan or some other revolving machinery was in the large part of the exhaust system where the fan was located. Anders testified that on a previous occasion he had seen Cappucio take the cover off of the hole in the large exhaust pipe and start to reach into the pipe and that he had instructed Cappucio not to do it; that he (Anders) would attend to that. Cappucio denied receiving such orders and instructions, although two witnesses called on behalf of the plaintiff in error testified that while Cappucio was in the hospital recovering from the injuries he told them he had been so instructed by Anders. Cappucio testified that on the day he was injured he accidentally dropped one of these metal pieces that he was polishing, into the receptacle immediately below said buffing wheel; that he did not notify

anyone but went to the opening in the pipe to which we have referred, took off the cover and reached his hand down into the exhaust-pipe and around inside, and was injured by the fan, which broke and cut his hand.

Section 1 of the Workmen's Compensation act provides, among other things, that the employer is required to pay "compensation for accidental injuries sustained by any employee arising out of and in the course of the employment," etc. (Hurd's Stat. 1916, p. 1272.) It is conceded this injury was accidental and that the award is not unjust if an award of any nature should be allowed. The sole question raised here is whether the injury arose "out of and in the course of the employment" of Cappucio. It is not sufficient that the injury occurs in the course of the employment. It must also arise out of the employment. These words are used conjunctively, and the circumstances of the accident must satisfy both the one and the other. "The words 'out of,' point, I think, to the origin or cause of the accident; the words 'in the course of,' to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident; the latter words relate to the circumstances under which an accident of the character or quality takes place." (*Fitzgerald* v. *Clarke & Son,* 1 B. W. C. C. 197; Boyd on Workmen's Comp. sec. 472.) It must be an accident resulting from a risk reasonably incidental to the employment. "An accident arises 'in the course of' the employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing." (*Bryant* v. *Fissell,* 86 Atl. Rep. (N. J.) 458. See, also, 1 Honnold on Workmen's Comp. sec. 113.) "An accident arises 'out of' the employment when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment, as incidental to it. * * * A risk is

incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * * It may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith." (*Bryant* v. *Fissell, supra,* on p. 461.) It is stated that it may be "difficult to conceive of any injury which arises 'out of' the employment which does not arise 'in the course of' it; but the converse, however, is not true. * * * The determination of this question presents one of the most difficult problems in connection with the act. It has been said that each case must depend upon its own circumstances and cannot be solved by reference to any formula or general principle." (Glass on Workmen's Comp. Law, 40.) "An accident only arises out of and in the course of a workman's employment when it arises from his doing or omitting to do some act within the sphere of his employment. If he chooses to step outside the sphere of his employment and to do something he is not expected or required to do, he does so at his own risk and is not under the protection of the act. * * * A sharp distinction is drawn between doing of a thing recklessly or negligently which a workman is employed to do and the doing of a thing altogether outside and unconnected with what he is employed to do, and if an accident happens in the former case it arises out of and in the course of the employment but not in the latter case. 'There are prohibitions which limit the sphere of employment and prohibitions which only deal with conduct within the sphere of employment. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent the recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere.' " (Elliott on Workmen's Comp. Act,—7th ed.—50. See, also, 1 Honnold on Workmen's Comp. sec. 114.) "If the

act which caused the injury was within the scope of the servant's employment, the mere fact that he had been expressly forbidden to do that act will not necessarily be fatal to his claim." (Glass on Workmen's Comp. Law, 52.) "Ordinarily, where workmen are not employed to work with machinery or in close proximity thereto, they are held not entitled to compensation for injuries received where they voluntarily put themselves in a position to be injured thereby. * * * An accident does not arise out of the employment if, at the time, the workman is arrogating to himself duties which he was neither engaged nor entitled to perform. But the courts are inclined not to be too severe upon workmen who are injured by attempts to further the master's business, although the attempt is in a line somewhat outside the precise scope of the employment." (Glass on Workmen's Comp. Law, 48.) Where a servant is employed to do a certain service and is injured in the performance of a different service voluntarily undertaken, the master is not held liable; also where a servant voluntarily and without direction from the master, and without his acquiescence, goes into hazardous work outside of his contract of hiring he puts himself beyond the protection of the master's implied undertaking, and if he is injured he must suffer the consequences. (1 Bradbury on Workmen's Comp. 458, 459.) A master is not liable for the injuries to his servant unless the servant was at the time in the performance of some duty for which he was employed. (*Stagg* v. *Edward Western Tea and Spice Co.* 169 Mo. 489.) A volunteer is one who introduces himself into matters which do not concern him, and does, or undertakes to do, something which he is not bound to do or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency. (*Kelly* v. *Tyra*, 114 N. W. Rep. 750.) The scope of a servant's duties is determined by what he was employed to do and what he

279 — 2

actually did with his employer's knowledge and consent, and an employee who was performing the same services he was in the habit of performing when he was injured is not a volunteer in performing such duties. (*Dixon* v. *Chiquola Manf. Co.* 86 S. C. 435.) These rules were briefly summed up in *Moore* v. *Manchester Liners,* (1910) A. C. 498, where it was stated an accident to an employee occurs in the course of employment when it takes place "while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing."

It is the rule that an employee is engaged in the course of his employment when the injury occurs within the period of his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it. Where a workman sustained an injury while attempting to regain his pipe, which had fallen, it was held that his action in attempting to recover his pipe, under the circumstances, seemed to satisfy all the conditions. He was within the period of his employment, at a place where he might reasonably be. It was held "he had a right to be at the place, riding on or walking beside the wagon; he was within the time during which he was employed, because the accident happened during the actual period of transit; and he was doing a thing which a man, while working, may reasonably do. A workman of his sort may reasonably smoke, he may reasonably drop his pipe, and he may reasonably pick it up again." (*McLauchlan* v. *Anderson,* 4 B. W. C. C. 376.) A boy who had charge of the handle of a machine lifted off the cover over some pinion wheels and played with them, with the result that his hand was caught in the wheels and the end of one of his fingers was torn off. He had orders not to lift the cover or touch the pinion wheels. It was held that the accident did not arise out of and in the course of his employment. (*Furniss* v. *Gartside & Co.*

(1910) 3 B. W. C. C. 411.)   A boy employed in a spinning mill injured himself while cleaning the machinery when it was in motion.   He was not employed to clean the machinery, and it was held that the accident did not arise out of the employment.   (*Naylor* v. *Musgrave Spinning Co.* 4 B. W. C. C. 286.)   A lad fourteen years of age was employed as a bobbin boy at a spinning mill.   His duty was to take off the bobbins and he had been fully instructed for the work.   While the machine was in motion he attempted to put on some weights which had fallen off, and was injured.   The duty of putting on weights belonged to men employed for that purpose.   It was held that the master was not liable for the injuries received.   (*Michael* v. *Henry,* 209 Pa. St. 213.)   A boy employed in a boot factory, who was directed to take an insole down-stairs to have it re-molded, and in the absence of the operator of the molding machine attempted to re-mold it himself and was injured, was held entitled to compensation where he had not been expressly forbidden to touch the molding machine.   (*Tobin* v. *Hearn,* 44 Ir. L. T. 197.)   A woman injured while cleaning a part of the machinery that it was not her duty to clean was held to have suffered an injury arising out of and in the course of the employment, where she was not expressly forbidden to clean the machinery.   (*Greer* v. *Thompson,* (1912) B. W. C. C. 272.)   Authority for a servant to act on an emergency, in his master's interest, may be implied.   Where a workman was injured in attempting to stop his master's runaway horse it was held that the accident arose out of and in the course of the employment although his work was wholly unconnected with the horses.   (*Rees* v. *Thomas,* 68 L. J. Rep. 539.)   A workman was employed to look after baggage, clean out lion cages and generally make himself useful, but it was no part of his duty to feed the lions. One afternoon this workman was left in sole charge of the cages of lions, with orders to see that no harm came to the lions or to anyone by reason of their fierceness.   One of

the lions got out of a cage and into a dressing room, but there was no evidence to show how it happened. The workman went into the dressing room and tried to drive the lion back into the cage, when the lion killed him. It was. held that as he had been left in charge it was his duty to get the lion back into the cage, and that as he was killed in the discharge of his duty the accident arose out of and in the course of his employment. *Hapelman* v. *Poole,* (1908) 2 B. W. C. C. 48.

These cases all serve to illustrate the principles as to when a workman is acting in the scope of his duties and when the accident arises out of and in the course of the employment. The difficulty arises only in applying these principles to the special facts of a given case. Cappucio testified that he had seen Anders put his hand in the pipe when articles had dropped in and that he (Cappucio) had never been forbidden to do the same thing, while Anders testified that he had at one time seen Cappucio start to reach inside the pipe and had forbidden him to do so, and that he told Cappucio to call on him if anything went wrong. The Industrial Board found that the weight of the testimony showed Cappucio had been forbidden to reach into said pipe to recover articles that were dropped. It can hardly be said that the evidence shows that there was any emergency in order to protect the property of the employer that would justify Cappucio in reaching into the exhaust pipe. There is no evidence tending to show that there was any danger from the piece of metal being left in the exhaust pipe. Had the piece fallen upon the floor, there can be no question that it might well be considered as in the line of his duty for Cappucio to have picked it up, as that would ordinarily involve no danger and would be naturally incidental to the work in which he was employed. Of course, it can readily be understood that he desired to have his box complete and all the handles there and not to be criticised because he had lost one; but it is plain from the construction of the

exhaust system, in connection with the machinery at which he was working, that he must-move with deliberation in order to step around to the large pipe, take off the tightly fitting cover and then reach in some distance,—far enough to bring his hand in contact with the fan. It certainly can not·be said that there was an emergency and that he was acting under a sudden impulse to protect the property of the employer. It is plain from the evidence and from the photograph in the record showing the construction of the machinery and the exhaust pipe, that they were totally distinct; that there was nothing in the construction that would tend in the slightest degree to lead Cappucio to think his work was in any way connected with cleaning the exhaust pipe or taking anything therefrom that had fallen into it, when in doing so he would be required to take off the tightly fitting cover of the pipe in order to reach into the opening. Whether this is true or not, we think the conclusion necessarily follows from this record that the act of opening this exhaust pipe to get the piece of metal out had no such reasonable connection with his work as to justify him in the conclusion that it was his duty to take off this cover and attempt to recover the article. In *Bischoff* v. *American Car Foundry Co.* 157 N. W. Rep. (Mich.) 34, it was held that "notice must be taken that a factory of to-day usually includes within the fields of its operations many fairly distinct lines of work, from that of the roustabout engaged in the ordinary labor that almost anyone may perform, to that of the expert mechanic, which can be done safely by those only with skill and experience. The difference between these various kinds of work was always recognized by the common law, and it was held to be negligence for the master to require of the servant, without warning and instructing him, the performance of work outside and more dangerous than that which the latter had contracted to perform. Such classification of work exists in the very nature of things, and as much under the statute as at common law. Its rec-

ognition is required by any proper organization of a factory, not only for efficiency but as well for the purpose of guarding against accident and injury. And if a workman, when there is no emergency, should of his own volition see fit to intermeddle with something entirely outside the work for which he is employed, he ought not to be allowed compensation upon the mere plea that he thought his act would be for the benefit of his employer. That plea may be of value under some circumstances, but it cannot authorize an employee to voluntarily take upon himself the performance of work for which he was not employed." The reasoning in that case is clearly applicable to the work which Cappucio was employed to do,—that is, the work of polishing was clearly different from the act of putting his hand into the pipe to clean it out or remove an article from it.

While the Industrial Board's findings of fact are conclusive on this court, the legal conclusions of that board, based upon such findings, are subject to the supervision of this court. The Workmen's Compensation act does not make the board's legal conclusions binding upon this court. If it is clear upon the facts that as a legal conclusion an injury was not accidental or that it did not arise in the course of the employment, a contrary conclusion awarding compensation will not be allowed to stand. (*Bell* v. *Hayes-Ionia Co.* 158 N. W. Rep. 179.) It seems manifest from the uncontroverted testimony in the record that Cappucio was not acting within the scope of his employment at the time he was injured.

The judgment of the circuit court will be reversed and the cause remanded, with directions to enter an order setting aside the award of the Industrial Board.

*Reversed and remanded, with directions.*