# IN THE MATTER OF WIDOW OF LOUIS BECI, DECEASED v. MARISKA IRON COMPANY.[1]

December 12, 1924.

No. 24,274.

**Award of Industrial Commission sustained.**

> The Industrial Commission found that Louis Beci died from injuries arising out of and in the course of his employment. The record does not establish conclusively that his injuries were sustained while in a place of danger in disobedience of orders to leave it.

Upon the relation of Walter W. Bowe and others, the supreme court granted its writ of certiorari directed to the Industrial Commission of Minnesota to review an order awarding compensation in an action brought under the Workmen's Compensation Act by the widow of Louis Beci, employe, against Mariska Iron Company, employer, and New Amsterdam Casualty Company, insurer. Affirmed.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for relators.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, and *V. A. Jensen,* for respondent.

TAYLOR, C.

Certiorari to review a decision of the Industrial Commission awarding compensation for an accidental injury which resulted in the death of Louis Beci, an employe of the Mariska Iron Company.

The commission adopted and affirmed the findings of the referee. The referee found that the deceased, while employed as a miner by the iron company,

"Sustained fatal accidental injuries arising out of and in the course of his employment, which immediately caused his death, the death of deceased being caused by an explosion and blast in an adjoining drift which blew through the wall into the drift in

[1]Reported in 201 N. W. 313.

which deceased was working, deceased being struck by flying fragments of rock from said explosion."

The relators contend that the injury to Beci was not sustained in the course of his employment and is not compensable for that reason. They insist that where an employer directs an employe to leave a place of danger or keep away from it, and the employe disobeys such orders by remaining at or going into the place of danger, he takes himself outside the sphere of his employment for the time being; and that injuries sustained while at the forbidden place do not come within the compensation law. They cite numerous cases in support of this rule. They further contend that the facts of the present case bring it within the rule stated. We are unable to sustain this last contention, and for that reason it is not necessary to determine in what cases or to what extent, if at all, the rule invoked applies under our statute.

Beci and his "partner," Natale Cecchetelle, were at work in drift No. 12. They had extended this drift 40 or 50 feet in a straight line from the chute and had then turned to the left at a right angle. Cecchetelle says they had extended it 7 or 8 feet beyond the angle at the time of the accident. John Cimoli and another miner were at work in drift No. 8 which was about 30 feet to the right of drift No. 12. They had extended this drift 40 or 50 feet parallel with No. 12 and had then turned to the left at a right angle and were extending it directly toward No. 12.

Beci understood English, Cecchetelle did not. About an hour before the accident, the foreman went into No. 12 and told Beci that when they blasted in No. 8 it was likely to break through, and when the men in No. 8 gave warning that they were about to blast to be careful and get out. Cecchetelle says that a few minutes before the blast Beci, who had been using a drilling machine, said he would take the machine back and get some powder at the chute, and disappeared with the machine around the turn at the angle. A little later he heard Beci say: "All right," but heard nothing else, saw no one, and did not know to whom Beci spoke.

Cimoli says that when he was ready to blast, he went to the chute at No. 12 and called to Beci, who was in the drift out of sight, that

he was going to blast, and that Beci replied: "All right." The blast blew through into No. 12. Cecchetelle, who was loading a car at the time, happened to be behind the car which protected him from the flying fragments of rock. Beci's body was found near where the blast blew through. His watch was near his hand and two sticks of powder at his side.

It was the custom to give warning 5 or 6 minutes or more before firing a blast. The time that elapsed in this instance between the warning given Beci and the blast does not appear, except that Cecchetelle was asked if it was from 5 to 10 minutes before the explosion that he heard Beci say, "All right," and answered, "about five minutes or 6 minutes before, I could not say exactly." On receiving the warning from Cimoli it was Beci's duty to warn Cecchetelle. Instead of doing so at once, he evidently continued on to the chute for his powder and was caught by the blast while returning. He is not here to tell what took place, or what he did, or why he did it. He is presumed to have been acting in the line of his duty, and not to have been guilty of disobeying orders. He may have misjudged the time required to get the powder or the time which would elapse before the explosion, and have believed he could get the powder and go back and warn Cecchetelle and then go to a place of safety in time to avoid the danger. We do not know, and can only conjecture, why he acted as he did. He knew that Cecchetelle was in a place of danger if the explosion should blow through the wall, and that it was his duty to give Cecchetelle warning in time for him to escape. He was undoubtedly going toward Cecchetelle at the time of the blast and the presumption is that he was doing so for the purpose of warning him.

The relators claim that Beci, as well as the other miners, did not believe that the blast would blow through into No. 12, and for that reason intended to continue with his work and ignore the warning and the direction given by the foreman. This may be true, but the presumption is to the contrary and we cannot say that the evidence establishes it conclusively. At most, it would only make a question of fact to be determined by the triers of fact. They have found that Beci was "in the course of his employment," when he

received the fatal injuries, and the evidence in the light of the attending circumstances fairly sustains this finding. We cannot say that this record shows, as a matter of law, that Beci had disobeyed the orders given him, and the judgment is affirmed.