## HILJA RAUTIO v. INTERNATIONAL HARVESTER COMPANY.[1]

May 23, 1930.

No. 27,858.

[1]Reported in 231 N. W. 214.

*Gannon & Strizich,* for relator.
*Toivonen & Harri,* for respondent.

WILSON, C. J.

Certiorari to review an order of the industrial commission awarding compensation.

Gust Rautio, the deceased employe, and Andrew Maki were relator's employes in the Bruce mine at Chisholm. They were contract miners. They worked together and were paid upon the basis of the quantity of ore mined. Each earned from $5.60 to $6.07 daily. On March 13, 1929, and for a long time prior thereto they worked in contract No. 40 located underground and at the extreme northerly end of the mine. Shortly before noon on that day these two men observed in contract No. 40 the beginning of a cavein.

They saw that water was seeping in from overhead. They ran out and reported to the boss, who after investigating the trouble in contract No. 40 transferred these two men to company account work where they remained for the balance of the day and wherein they were paid common labor wages. They were transferred to work in a drift, which was a long passageway connecting various contracts in the underground mine. It was about six feet wide and several hundred feet long. It was in the third level and 28 feet below the level of contract No. 40.

An investigation was made by relator. The conclusion was that it was not safe to work in contract No. 40. Word was passed on to the bosses to keep the employes out of this contract until the danger had been removed. Chute 37 was 200 feet away from the foot of the ladder hereinafter mentioned. The distance from the top of the ladder into contract No. 40 proper was also about 28 feet.

These two men reported for work the following morning. At the tool house they met their boss, who told them that they could not work in contract No. 40 on that day and for them to go to chute 37 on the third sublevel and begin work where the night crew had "left off," and that they would find tools there. They started in that direction. They stopped a moment to visit with other miners in contract No. 28. While there the boss again repeated his directions as to where they should work, where they would find tools, and for them not to go into contract No. 40. The boss testified that he also told them "it was dangerous." Maki testified that he did not hear the statement as to danger but does state that the boss told them they could not work in contract No. 40 on that day.

As the men went from contract 28 to the place of their work deceased walked ahead of Maki. He did not stop at the place of the work as Maki did, but he continued along the drift to a ladder, climbed the ladder and walked into contract No. 40, where he was immediately killed by a cavein. His wife, the petitioner, seeks to recover compensation.

■ The work to be done by these men required the use of shovels. The boss had told them they would find tools at the place where

they were to work. He testified that he had taken the tools from contract No. 40 the day previous and had left them at chute 37 standing in the mud alongside the timber and alongside the drift. Maki saw only one shovel and one pick.

It is suggested by petitioner that decedent may have gone into contract No. 40 to get a shovel. There was a tool house where he could have gotten a shovel. There is no satisfactory evidence that he searched for tools at the place of work. He "slowed up" but did not stop there. Maki saw him swing his lamp around at that place but he kept going. The evidence fails to disclose the suggested purpose. Indeed, the claim is purely conjectural, and we find nothing in the record to warrant an inference of that character. The conclusion of the commission was not based upon this theory.

■ A majority of the commission awarded compensation upon the theory that the employe when killed was making an inspection of conditions in contract No. 40 for the purpose of determining his own safety at the place where he was to work. Maki testified that it is customary for an experienced miner, before he starts working at a place, to look around first to see if the place is safe in which to work. Perhaps this relates more directly to contract work, but we will assume that it relates to all work in a mine. Such investigation would relate to the immediate surroundings and having in mind the timbers and supports which protect the men while engaged in their particular work. The safety of the mine in general is in the hands of others qualified by education and experience for such work. That duty requires persons other than ordinary miners. The shaft in this mine was about a mile in length. Many men were employed. The danger from contract No. 40 had no special application to the work these men were to do at chute 37 on the sublevel 28 feet below. Their danger, if any, was a common danger. The cavein which actually occurred in no way affected the supports for safety where they were to work. It did cause and permit water and sand to flow there. It cannot be regarded as the duty of the employe to go into contract No. 40 for the purpose of inspection.

In the language of the dissenting opinion of Commissioner Duxbury:

"It would have been just as reasonable for him to go and inspect the means of egress from the mine before going to work as it was to inspect this particular locality."

According to the maps in evidence and the evidence of relator the place for these men to work was 200 feet from the ladder. But, accepting Maki's version, the place was 75 feet from the ladder, while contract No. 40 was up 28 feet on another level and 28 feet beyond. The places were unrelated. The claim that the employe may have been making an inspection is without support in the evidence. It is conjectural. There is nothing in the evidence to warrant an inference to that effect. Other inferences would at least be equally permissive. He may have been curious to know how far the trouble had developed and the prospect for his early return to his more lucrative work. We need not decide why he went to the place of danger. It is sufficient for us to determine that his presence in contract No. 40 was not reasonably required by his special employment on that day. The employe knew of the danger in contract No. 40. That danger drove him therefrom. The following morning he was told that he could not work in contract No. 40 on that day. He knew why. Yet with this information he went into the danger zone and was fatally injured. We construe the circumstances as the equivalent of the employe's having entered the danger zone in violation of orders. Contrary to his instructions to work at a certain place because of a known danger at another place, he deliberately, for purposes of his own, put himself in the danger zone.

■ In proceedings under the workmen's compensation act, if there is competent evidence in the record which, standing alone, fairly tends to prove that the accident arose out of and in the course of the employment, this court will not question its sufficiency; but whether there is any evidence in the record which fairly tends to establish that fact is a question of law which this court must determine.

■ The finding that the accident which occasioned the injury arose out of and in the course of the employment cannot be sustained. The words "out of" relate to the origin of the accident; the words "in the course of" to the time, place and circumstances under which the accident occurs. The former words relate to the character of the accident, while the latter words relate to the circumstances under which the accident takes place. An accident comes within the latter words if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during the time to do that thing. The accident, in order to arise "out of" the employment, must be of such nature that the risk might have been contemplated by a reasonable person, when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

When a workman is injured while doing a thing outside and unconnected with what he is employed to do he is not under the protection of the act.

"There are prohibitions which limit the sphere of employment and prohibitions which only deal with conduct within the sphere of employment. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent the recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere." Eugene Dietzen Co. v. Industrial Board, 279 Ill. 11, 16, 116 N. W. 684, 686, Ann. Cas. 1918B, 764.

So if the act which caused the injury was within the scope of the employment the mere fact that it had been forbidden is not necessarily fatal to his claim that it may have been in the furtherance of the employer's interests. The employe may not arrogate to himself duties which he was neither engaged nor entitled to perform. Where an employe voluntarily and without direction from the employer and without his acquiescence undertakes to do hazardous

work outside of his contract of hiring, he puts himself beyond the protection of the compensation act.

Violations of orders or directions do not always defeat compensation. But when such violation takes the employe out of the sphere or scope of his employment it is fatal to his claim for compensation. Eugene Dietzen Co. v. Industrial Board, 279 Ill. 11, 116 N. E. 684, Ann. Cas. 1918B, 764; Smith v. Corson, 87 N. J. L. 118, 93 A. 112; Fournier's Case, 120 Me. 236, 113 A. 270, 23 A. L. R. 1156; West Side C. & M. Co. v. Industrial Comm. 291 Ill. 301, 126 N. E. 218; Northern Illinois L. & T. Co. v. Industrial Comm. 279 Ill. 565, 117 N. E. 95; Lobuzek v. American C. & F. Co. 194 Mich. 533, 161 N. W. 139; Beci v. Mariska Iron Co. 161 Minn. 237, 201 N. W. 313; Olson v. Robinson, Straus & Co. 168 Minn. 114, 210 N. W. 64; State ex rel. Storm v. Hought, 56 N. D. 663, 219 N. W. 213, 58 A. L. R. 186; Hibberd v. Hughey, 110 Neb. 745, 194 N. W. 859; Johnson v. Hardy-Burlingham Min. Co. 205 Ky. 752, 266 S. W. 635; Harris v. R. P. Dobson & Co. 150 Md. 71, 132 A. 374; Walcofski v. Lehigh Valley Coal Co. 278 Pa. 84, 122 A. 238. The employe's departure from the sphere and scope of his employment will under the circumstances prevent a recovery. An employe may so lose his protection regardless of orders or directions.

■ Looking at the unfortunate situation from another angle, we are of the opinion that the evidence is insufficient to sustain the award. The burden is on the plaintiff. The proof must be more than consistent with her theory. Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678.

Reversed.