Gary R. **SCHMIDT, et al., Appellants,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Respondent.**

No. C4–85–358.

Court of Appeals of Minnesota.

Oct. 29, 1985.

Patrick V. Johnson, Minneapolis, Jerome M. Rudawski, St. Paul, for appellants.

Jon A. Hanson, Tony R. Krall, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Appellants Gary R. Schmidt and Thomas C. Auel (Schmidt and Auel) appeal from a judgment denying fire loss coverage under a policy issued by respondent St. Paul Fire and Marine Insurance Company (St. Paul). In a special verdict, the jury awarded damages to appellants totalling $16,000 and further found that appellants had a reasonable expectation of coverage. The trial court adopted the previous finding but ruled as a matter of law that coverage did not exist. We affirm in part, reverse in part and remand for further proceedings.

## FACTS

On November 13, 1979, Schmidt and Auel bought a vacant rooming house intending to renovate it. They subsequently contacted Michael McNamee, an independent insurance agent, who submitted an application for insurance to the Minnesota Property Insurance Placement Facility. The facility's purpose is to assure that property which does not qualify for basic property

insurance through the normal insurance market will have access to insurance through the state bureau. Minn.Stat. § 65A.32 (1984). The facility accepted the risk, established the premiums and assigned the policy to St. Paul for servicing.

On November 28, 1979, St. Paul sent Schmidt and Auel a letter stating the following:

> Based on the information in your application and the inspection report of the Minnesota Inspection Bureau, the premium and policy conditions will be:

Perils:  X  Fire      X  Extended Coverage

         X  VMM Term 1 Year
            (vandalism and
            malicious mischief)

The letter also indicated an additional charge of $150, included in the $411.68 premium, for vacancy coverage. The coverage was to take effect on the date appellants' check was received by St. Paul.

In response to this offer of coverage, Schmidt and Auel sent their check for $411.68 on December 3, 1979. Subsequently, they signed a vacancy endorsement, which limited vacancy coverage to 90 days. Schmidt and Auel did not know of the 90-day restriction at the time of signing.

On October 24, 1980, the vacant rooming house burned down. Appellants submitted a claim for the full coverage of $25,000. St. Paul denied the claim because the 90-day vacancy endorsement extended only to March 5, 1980. In a special verdict, the jury found that Schmidt and Auel had never received a copy of the insurance policy containing the restrictive language of the endorsement. The court adopted this finding. The jury awarded appellants damages of $16,000.

The jury further found that appellants had a reasonable expectation of coverage beyond March 5, 1980. The court found, however, that the letter of November 28, 1979, offering coverage was a binder or temporary insurance contract and that reference to the underlying policy was necessary to determine the details of coverage. *See* Minn.Stat. 65A.03 (1984).

Since the vacancy endorsement specified that coverage was only for a period from December 5, 1979, to March 5, 1980, the court found that the reasonable expectations doctrine was not applicable. Consequently, the court held as a matter of law that the loss was not covered.

From the judgment entered in favor of St. Paul, Schmidt and Auel filed this appeal.

## ISSUES

I. Did the trial court err when it held, as a matter of law, that the fire loss was not covered?

II. Did the trial court err in submitting the issue of damages to the jury?

## ANALYSIS

In order to overturn a trial court's findings, a reviewing court "must be left with a definite and firm conviction that a mistake has been made, notwithstanding the evidence to support such findings." *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 88 (Minn. 1979).

We initially note that appellants failed to move for a new trial as dictated under Minn.R.Civ.P. 59.01 and 59.03. The trial court erred, however, in considering the reasonable expectation of coverage in its findings of fact. Determination of reasonable expectation of coverage presents a question of law and thus we are not foreclosed from considering this issue on appeal. *See Rautio v. International Harvester Co.,* 180 Minn. 400, 231 N.W. 214 (1930). Moreover, an appellate court need not defer to the trial court in reviewing questions of law. *Van De Loo v. Van De Loo,* 346 N.W.2d 173 (Minn.Ct.App.1984).

I. Neither party disputes the court's finding that the November 28 letter was a binder. The court noted that coverage was obtained under the Minnesota FAIR Plan Act, which specifies:

> Binders * * * shall be deemed to include all the terms of such standard fire insurance policy and all such applicable en-

dorsements as may be designated in such contract of temporary insurance.

Minn.Stat. § 65A.03 (1984). Therefore, the court held that reference to the underlying policy must determine the details of coverage. *See, Indiana Mutual Casualty Co. v. Pratt,* 177 Minn. 36, 224 N.W. 253 (1929).

The standard fire policy is set forth in Minn.Stat. § 65A.01 (1984). It contains as part of its standard terms a provision which reads:

> Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring:
>
>    \*     \*     \*     \*     \*     \*
>
> (b) while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of *60 consecutive days* \* \* \*.

Minn.Stat. § 65A.01, subd. 3 (1984) (emphasis supplied). A vacancy endorsement attached to the policy specified that vacancy coverage "shall not exceed 90 days." The court incorporated this 30-day extension of coverage into the policy and found the policy language unambiguous. According to the court, the policy terminated on March 5, 1980.

Appellants agree that a binder normally implies reference to the standard policy to determine the details of coverage. Appellants contend, however, that in this case they contracted for coverage beyond that provided in the standard policy. Specifically, they argue that the additional premium charged for a vacancy permit, the binder's reference to one year coverage and the absence of any language limiting or excluding coverage created an ambiguity in the policy. Therefore, they argue that the trial court erred in disregarding the jury's finding of a reasonable expectation of coverage beyond March 5, 1980.

Appellants further contend that the court's action is incongruent with the jury's finding that appellants never received a copy of the insurance policy and the endorsement's restrictive language. We agree. The trial court relied on *Twin City Hide v. Transamerica Insurance Co.,* 358 N.W.2d 90 (Minn.Ct.App.1984), in holding that the reasonable expectations doctrine was not applicable. The court read that decision as requiring ambiguity in an insurance policy before the reasonable expectations doctrine applied. This reliance is misplaced.

*Twin City Hide* concerned representations made after a loss had occurred. The appellant in *Twin City Hide* argued that its reasonable expectations should determine coverage. The court summarily stated that an insurance contract is not subject to interpretation if the contract is unambiguous. *Id.* at 93. The court, however, did not analyze the reasonable expectations doctrine.

The controlling authority for this issue is *Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271 (Minn.1985). In *Atwater,* the court reversed the denial of policy coverage due to the reasonable expectations of the purchaser of the policy. *Twin City Hide* was not referred to in the decision. The insurance policy there contained a provision for loss caused by burglary but required "evidence of forcible entry" before coverage was allowed. Despite the plaintiff's admission that he had not read the policy in its entirety, the court held that where the technical definition of burglary is, in effect, an exclusion of coverage it would not be interpreted to defeat the reasonable expectations of coverage. *Id.* at 278–79.

The *Atwater* court discussed at some length the reasonable expectations doctrine noting that it

> gives the court a standard by which to construe insurance contracts without having to rely on arbitrary rules which do not reflect real-life situations and without having to bend and stretch those rules to do justice in individual cases.

*Id.* at 278.

The *Atwater* court cited *Canadian Universal Insurance Co. v. Fire Watch, Inc.,* 258 N.W.2d 570 (Minn.1977) as another instance where the reasonable expectations doctrine was used to provide coverage when the actual language of the policy

would have proscribed coverage. *Canadian Universal* involved a special endorsement issued after the policy which reduced coverage without notice to the insured. Because the language of the policy and endorsement were unambiguous, the trial court there excluded coverage. The supreme court reversed, applying the reasonable expectations doctrine.

The court in *Atwater* correctly observed that the issue in *Canadian Universal* was somewhat different from the issue in *Atwater,* but concluded it was not so different that the general principle was inapplicable. The *Atwater* court concluded:

[T]he reasonable expectations doctrine does not automatically mandate either pro-insurer or pro-insured results. It does place a burden on insurance companies to communicate coverage and exclusions of policies· accurately and clearly. It does require that expectations of coverage by the insured be reasonable under the circumstances.

*Atwater* at 278.

■ In the present case, Schmidt and Auel told McNamee that they wanted coverage for a vacant building. McNamee testified that he told Auel the general vacancy coverage was for 60 days, but was assured that the building would be vacant for only 30 days. Appellants' assurances are not relevant to a decision in this case since they were made prior to issuance of the binder agreement. The relevant portion of the binder provides as follows:

Perils  X̲ Fire  X̲ Extended Coverage  X̲ VMM Term-One year

Vacancy Permit 21.00
4.00
125.00
.42

Total Annual Premium  $411.68

We think the binder's plain language creates an ambiguity in the policy. The binder references to annual coverage twice: "VMM—*One year*" and "Total *Annual* Premium." A more restrictive reading of "VMM Term—One year" lends support to one year coverage for vandalism and malicious mischief only, but this is not dispositive. The binder provides for "Extended Coverage" and includes "Fire" within the perils of coverage. Moreover, the binder includes an additional $150.42 premium for a vacancy permit within the total annual premium of $411.68.

Respondent admits that payment in this amount was received on December 3, 1979. The vacancy endorsement attached to appellants' standard policy specifies that vacancy coverage extended for 90 days and terminated on March 5, 1980. The trial court relied on this date in finding the policy unambiguous. This ignores a material fact in the jury's special verdict. The jury found that neither the policy nor the vacancy endorsement was delivered to appellants. Therefore, appellants' sole source of information pertaining to coverage was the binder agreement which did not provide for a definite coverage period. As such, appellants could reasonably rely on a full year's coverage and compensation for their loss on October 24, 1980.

The ambiguity of the binder and the nondelivery of the policy and vacancy endorsement convince us that appellants had a reasonable expectation of coverage. The jury's finding in this regard will not be disturbed. On this issue, we reverse.

■ II. Appellants argue that the issue of damages should not have been submitted to the jury since their loss was total and accordingly, respondent must tender the face amount of the policy—$25,000. The jury assessed damages of $16,000. Appellants also seek prejudgment interest on the full amount of damages. Although appellants failed to object to jury instructions on damages at trial, the issue was

raised in its motion for JNOV. The trial court did not address appellants' motion since it determined no coverage existed.

The basic principle of a "valued" policy statute is that the parties to a fire insurance contract agree in advance to the value of the property to be insured. *Nathan v. St. Paul Mutual Insurance Co.*, 243 Minn. 430, 68 N.W.2d 385 (1955). "[T]he insurer shall pay the whole amount mentioned in the policy or renewal upon which it receives a premium, in case of total loss, and in case of partial loss, the full amount thereof." Minn.Stat. 65A.08 (1984). *See Ehlert v. Graue*, 292 Minn. 393, 195 N.W.2d 823 (1972).

■■■ We are unable to glean any definite proof of loss from the record. The only evidence of loss introduced by appellants consisted of Auel's testimony that the building had "burned down" and the proof of loss filed with respondent indicating that the loss was "total." Moreover, there is insufficient evidence in the record to indicate how the jury arrived at its assessment of $16,000 in damages.

The trial court did not rule on appellants' request for prejudgment interest due to its finding that the loss was not covered. Section 65A.01 is applicable to this issue and provides that in a standard fire insurance policy:

> [T]he company will not in any case be liable for more than the sum insured, *with interest thereon from the time when the loss shall become payable*, as above provided.

Minn.Stat. § 65A.01, subd. 3 (emphasis added).

■■■ We note that the trial court refused to allow Patrick Johnson to substitute for appellants' counsel during oral argument on plaintiffs' motion to amend judgment. This action was based on the absence of such authority in the record. While we do not encourage lack of proper documentation in substituting attorneys, we think that attorney Johnson's presence throughout portions of the trial and his association with the attorney of record supported his authority to argue the motion. Johnson made the request to argue the case as an officer of the court and here the request should have been honored.

## DECISION

Appellants had a reasonable expectation of coverage when the insurance policy and vacancy endorsement were never delivered and the period of coverage in a binder agreement was ambiguous. Insufficient proof of loss and explanation behind a jury's assessment of damages require a remand to the trial court. We affirm in part, reverse in part and remand for further proceedings.

Affirmed in part, reversed in part and remanded.

FORSBERG, Judge, dissenting:

I respectfully dissent. It should be initially pointed out this case involves a binder of insurance referencing a policy of insurance which the insured claimed he did not receive. The standard fire policy contains a 60-day vacancy provision extended by endorsement in this case to 90 days. The provision is clearly unambiguous and based on the lack of ambiguity, the trial court concluded that the reasonable expectation doctrine is inapplicable and denied coverage. Appellant cites *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985) as authority that a policy need not be ambiguous to trigger the reasonable expectations rule. It appears that appellant's argument is well-founded. The proceedings had been completed before the *Atwater* case was decided, so the trial court did not have the opportunity to distinguish the *Atwater* case.

However, under *Atwater* it would appear that certain factors must exist before the reasonable expectations doctrine is applicable. In *Atwater* the court stated:

> As Professor Keeton points out, ambiguity in the language of the contract is not irrelevant under this standard but becomes a factor in determining the reasonable expectations of the insured,

along with such factors as whether the insured was told of important, but obscure, conditions or exclusions and whether the particular provision in the contract at issue is an item known by the public generally. The doctrine does not automatically remove from the insured a responsibility to read the policy. It does, however, recognize that in certain instances, such as where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions.

*Id.* at 278. Thus, such factors are either that the policy provision is ambiguous, or that the exclusion is obscurely hidden in the policy and such provision is not a normal or usual policy provision.

In the instant case, the vacancy provision is without doubt a normal and usual condition in a fire policy. In fact, it is contained in the Minnesota Standard Fire Policy.

Therefore, I would affirm the decision of the trial court.