[File No. 6620.]

GORDON W. LA BREE, Appellant, v. DAKOTA TRACTOR AND EQUIPMENT COMPANY, a Corporation, Respondent.

(288 N. W. 476.)

Opinion filed October 11, 1939.  Rehearing denied November 18, 1939.

*Thorp, Wattam & Vogel,* for appellant.
*Nilles, Oehlert & Nilles,* for respondent.

BURR, J.  On January 2, 1938, the plaintiff was injured in a collision between an automobile driven by himself and a road grader traveling on the highway.  In his complaint the plaintiff alleges: "That

at said time and place the Dakota Tractor and Equipment Company, defendant above named, was the owner of a road grader which was then and there on said highway, being driven and operated by one Oxenrider, an employee of the defendant company, under the directions of said company, and which road grader was proceeding in an easterly direction between the City of Casselton and the said City of Fargo, on said public highway No. 10."

The answer ". . . denies that said accident was caused by any act or omission on the part of the defendant, or on the part of any agent or servant of the defendant; and further alleges that if the plaintiff sustained any accident, loss or injury, that the same was due to the carelessness and negligence of the said Gordon W. La Bree, driver of said automobile, and that his carelessness and negligence contributed thereto."

On the trial of the case it developed that the defense of the defendant relative to the operation of the road grader at the time of the collision was that Oxenrider was not an employee of the company but an independent contractor.

The defendant made appropriate motions for dismissal of the action, for a directed verdict, etc., to which objection was made by the plaintiff.

The case was submitted to the jury, who returned a substantial verdict in favor of the plaintiff. The defendant moved for judgment non obstante, or in the alternative for a new trial. This motion was based upon several grounds—that the undisputed evidence showed Oxenrider to be an independent contractor and therefore the defendant was not liable for any of his omissions or negligence; that the plaintiff was guilty of contributory negligence which, as a matter of law, barred his recovery; that in case the motion for judgment notwithstanding the verdict was denied, then as grounds for a new trial the plaintiff alleged the insufficiency of the evidence to justify the verdict, errors in law occurring at the trial and duly excepted thereto, and excessive damages appearing to have been given under the influence of passion or prejudice.

In its assignment of errors of law the defendant set forth certain

instructions of the court to the jury in regard to contributory negligence and the measure of damages.

Upon the hearing of this motion the trial court determined that as a matter of law the defendant was entitled to judgment notwithstanding the verdict on the ground Oxenrider was an independent contractor and not an employee of the defendant company; that this was established on the trial as a matter of law; that there was no evidence on this issue contrary thereto to be submitted to the jury; that the injury which was occasioned was the result of "negligence resulting from the improper handling of the grader in the course of its delivery by Mr. Oxenrider or contributory negligence on the part of the plaintiff;" and that it was not necessary to pass upon the question whether the court was in error in instructing the jury as to contributory negligence, as to dangerous instrumentalities, or other grounds which are alleged as grounds for a new trial. The court ordered the verdict set aside and judgment for the defendant for the dismissal of the action. From this judgment plaintiff appeals.

Where the defendant made a motion for judgment notwithstanding the verdict, as in this case, and the trial court holds, on the hearing of said motion, that the defendant was not liable because Oxenrider was an independent contractor, such holding must of necessity be based on the theory that there was no evidence whatever to submit to the jury upon which the latter could find to the contrary and that the defendant had shown this conclusively. If there was evidence on this point tending to show that Oxenrider was in fact an employee of the company and engaged in the company's business as its servant at the time of the injury, then it became a matter for the jury, and a motion for judgment notwithstanding the verdict should not be granted. A motion for judgment non obstante does not go to the weight of the evidence, and such motion should not be granted unless the moving party is entitled to judgment as a matter of law. Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819; State ex rel. Brazerol v. Yellow Cab Co. 62 N. D. 733, 736, 245 N. W. 382. See also Taylor v. Minneapolis, St. P. & S. Ste. M. R. Co. 63 N. D. 332, 248 N. W. 268.

In determining the validity of the ruling the evidence must be considered in the light most favorable to the party against whom the motion is made. Taylor v. Minneapolis, St. P. & S. Ste. M. R. Co. supra.

The defendant was engaged in the business of selling road machinery to municipalities and for such purpose its recognized agent entered into a contract with Dickey county whereby the county purchased a new road machine and as part payment on this new machine gave the road grader involved in this action. Title to it passed in Dickey county and the defendant was to deliver the new machine in Dickey county at a later period. The defendant desired to transport this old machine to its place of business in Fargo.

The county had owned the machine for a number of years, and during that time Mr. Oxenrider was the operator in charge of the grader upon the roads. For twelve years prior thereto he was familiar with this class of machinery and at the time the contract for the new machine was entered into he was in the employ of Dickey county, operating this old machine. This was in December of the year 1937. Knowing that Oxenrider was familiar with the machine, the company asked him to drive it to Fargo for them. At first he demurred as his time belonged to the county but expressed a willingness to do it if the county would permit him to take the time. As an inducement it was suggested that as Oxenrider would be operating the new machine, which had not yet been delivered but was at Fargo, it would be expedient for him to go to Fargo and take some lessons in the operation of the new machine. Oxenrider told the defendant's agent that he could not undertake the work at once, it being too near Christmas, that he wanted to spend Christmas with his family, but thereafter he could take it; and this was agreeable to the defendant. It was pointed out in the discussion that the condition of the roads could not be prognosticated for any length of time in advance, and owing to the fact that some roads might be blocked by snow before he would begin his work, the question of the route he would take was left to his judgment. For his services he was to be paid twenty-five dollars in cash and his expenses en route. While Oxenrider was driving the machine between Casselton and Fargo, the collision took place.

It is argued with a great deal of earnestness that the relationship between the defendant and Oxenrider was not that of master and servant, employer and employee, but rather that of an independent contractor, and if so the defendant was not liable for the result of the collision.

The court instructed the jury quite fully with reference to this issue, placing the burden of proof upon the plaintiff to show that Oxenrider was an "employee of the defendant at said time and place, under the directions of said defendant, and at said time and place was acting within the scope of his employment."

The court charged that this claim was "expressly denied by the defendant, and said defendant asserts that Mr. Oxenrider was what is known in law as an independent contractor."

After stating the issues in this respect the court charged fully in regard to an employee and an independent contractor and stated to the jury: "It is for you to say whether this (master and servant) was the relationship between Mr. Oxenrider and the defendant and the burden of proof is upon the plaintiff to prove the existence of such relationship."

The record shows that shortly after the collision, when Oxenrider reached West Fargo, he caused word to be sent to the company with reference to this accident, informing the company where the road grader was at that time. The defendant sent employees out and had it transported from there to Fargo.

Defendant asserts this state of facts shows conclusively that Oxenrider was a contractor who undertook to transport the machine from Dickey county to Fargo, that he had full control over it, that he was not under the direction of the defendant, that he had the choice of routes and was paid a lump sum for his services. On the other hand, it is plaintiff's claim that the defendant, when it found the machine on its hands in Dickey county and as its own property, employed Oxenrider to drive it for them instead of having an employee sent out from Fargo, and because it was advantageous to the county to have Oxenrider the temporary employee of the defendant because of the lessons he would receive in Fargo with reference to the new machine, the county allowed its own employee to work for the defendant in this respect.

There is no dispute but what the road grader was the property of the defendant and was being operated by Oxenrider at the time of the collision. Naturally, from these facts alone, one would assume he was an employee of the defendant, and this is a prima facie showing of the relationship. But the defendant says he was an independent contractor. The burden of proof in this respect is upon the defendant.

Ruehl v. Lidgerwood Rural Teleph. Co. 23 N. D. 6, 15, 135 N. W. 793, 795, L.R.A.1918C, 1063, Ann. Cas. 1914C, 680; Midgette v. Branning Mfg. Co. 150 N. C. 333, 64 S. E. 5, 8. Under this rule the burden to show Oxenrider was in the employ of the defendant was upon the plaintiff in the first instance; but the North Carolina court shows: " 'Where the plaintiff has suffered an injury from the negligent management of a vehicle, . . . it is sufficient prima facie evidence that the negligence was imputable to the defendant to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control at the time, and that the accident was occasioned by the fault of a stranger, an independent contractor or other person, for whose negligence the owner would not be answerable.' "

A person is not an independent contractor merely because he is paid by the piece or by the job, nor merely because he was not to be paid until the job was satisfactorily completed. Ruehl v. Lidgerwood Rural Teleph. Co. supra. In the case cited we said: "This would merely be evidence of the fact that the method of work was subject to the approval of the company. It is a provision which is implied in all contracts of employment. No laborer can recover his daily wage unless he can show that he has earned it."

An illuminating case is that of Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564. Herein the court says: "It is not easy to frame a definition of the term 'independent contractor' that will satisfactorily meet the conditions of different cases as they arise, as each case must depend so largely upon its own facts. One text writer declares such contractor to be one who undertakes to do specific pieces of work for other persons, without submitting himself to their control in the details of the work, or one who renders the service in the course of an independent employment, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. 1 Shearman & Redfield, Negligence, §§ 164, 165. So it is said that an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his

employer, except as to the result of the work. . . . The plaintiff is not concluded by these definitions."

The facts in this Minnesota case, as shown by the opinion, are: that the defendant was a fuel company; that one, whose general business was that of hauling coal, delivered by the order of the defendant a ton of coal to one of its customers, delivering the coal through a hole in the sidewalk. Upon completing his work he failed to cover the hole properly and the plaintiff in the case was injured. The defendant claimed that the driver was an independent contractor and showed that he was paid by the ton for delivering the coal, owned the team and the running gear of the wagon. The defendant furnished him the wagon box. He could quit when he wanted, and his routine of work was that when an order for coal came in it was delivered to him to execute according to the amount, quality, and price specified. He would then load the coal, take it to the specified place, get the money for it, procure a receipt for the coal, and return the money to the defendant. The court held he was a mere servant.

It is true in the case at bar Oxenrider was not employed for any definite time but merely to perform a particular job. But in Jensen v. Barbour, 15 Mont. 582, 39 P. 906, 908, it is stated: " '. . . The fact that the employee was hired, not for a definite time, but to perform a particular job, does not, however, of itself negative the relation of master and servant, for under such a contract the employer may well retain full control over him; and it must be constantly borne in mind that the power to control, on the part of the employer, is the essential fact establishing the relation.' . . ."

The Montana court states this as a quotation from 2 Thompson on Negligence, p. 909, and further from this textbook writer: "A person who, for a stated sum, engages to perform a stated piece of labor in which he is skilled, the proprietor of the work leaving him to his own methods, is an independent contractor."

The Montana court, after this last statement, enters into a discussion of the distinction between control of the "result" and control of the "method of work." It is argued here the only control the defendant had over Oxenrider was that of the result, and upon the result being accomplished he would be paid. The Montana court, however, points out that in a sense the result is always involved even in the case of a

servant, and that in dealing with the distinction between a servant and an independent contractor where the "result" is involved, the latter word means "a production or product of some sort, and not a service. One may contract to produce a house, a ship, or a locomotive and such house or ship or locomotive produced is the 'result.' Such 'results' produced are often, and probably generally, by independent contractors. But we do not think that plowing a field, mowing a lawn, driving a carriage or a horse car for one trip or for many trips a day is a 'result' in the sense that the word is used in the rule. Such acts do not result in a product. They are simply a service."

In Rait v. New England Furniture & Carpet Co. 66 Minn. 76, 68 N. W. 729, the court says: "The terms 'independent contractor' and 'servant,' as applied to the subject in hand, are somewhat unsatisfactory, but are used for want of better ones. The word 'servant,' as used in this connection, is applicable to any relation in which, with reference to the matter out of which the alleged wrong has sprung, the person sought to be charged had the right, under the contract of employment, to control, in the given particular complained of, the action of the person doing the alleged wrong. . . ."

In this Minnesota case it appeared the building occupied by the defendant as a furniture store was defective in that the roof leaked by reason of the accumulation of ice and snow, and the president of the company employed one Dinsmore, "whose general occupation was that of contractor and builder, to repair the roof, so as to stop the leak." The evidence adduced showed that Dinsmore was asked if he could stop the leak, he said he could, and he was told: " 'If you can, I will be very much obliged to you, I wish you would go ahead and stop it. If you will go ahead and stop it, and not bother me about the details of it, I shall be under great obligations to you; and, when you get it done, bring in your bill, and I will pay it.' " Dinsmore told him he could fix it, and the president of the company said: " 'Well,' . . . 'go ahead, and don't bother me about it. Fix it up, and bring me the bill.' " It was held this made Dinsmore an employee rather than an independent contractor even though it was his general business to repair roofs.

Where one enters into the relationship of independent contractor, ordinarily he has the right to choose his own employees and servants

to carry on the work, being responsible only to the other party to the contract to produce a result according to the contract. There is nothing here to indicate that Oxenrider could have delegated the right of driving this grader to Fargo to anyone else by hiring someone to do it for him. He was not in the business of transporting machinery; he was employed by the defendant to drive the machine to Fargo. True, he was an experienced man, but any employee the defendant would have used would need to be more or less of an expert in driving such machine or he would not be intrusted with it. The fact that it was to the interest of Dickey county to allow Oxenrider to take the machine to Fargo because he would receive some instruction in the new machine does not alter the relation between him and the defendant company. Both the defendant and Oxenrider seem to have recognized that Oxenrider had no right to substitute anyone for himself for when the machine reached West Fargo after the collision, Oxenrider sent word to the company that it was there, and it was the company that sent out men to bring it in. Oxenrider did not hire anyone to fulfil this so-called "contract." Both sides seem to have recognized that he was a mere employee.

In Lilly v. Haynes Co-op. Coal Min. Co. 50 N. D. 465, 475, 196 N. W. 556, 559, we set forth the crucial test. The employer need not exercise any right of control. It is sufficient if he possesses it. This is the primary test. State ex rel. Woods v. Hughes Oil Co. 58 N. D. 581, 597, 226 N. W. 586, 592.

The recent case of Curry v. Bruns, 136 Neb. 74, 285 N. W. 88, has observations which are pertinent to this case. There the court said: "The fact that an employee is the general servant of one employer (Oxenrider was the general servant of Dickey county) does not, as a matter of law, prevent him from becoming the particular servant of another (the defendant in this case) who may become liable for his acts."

In determining the relationship the decisions show that ordinarily the matter turns on the right of control. In this respect this quotation from the Nebraska case (136 Neb. 77, 285 N. W. 89, 90) is pertinent: "The right of control, or the want of it, is determinative of the relationship; for one who has no right of control over another ought not be required to answer for his acts, and, on the other hand, if one has such

right of control he should be answerable. Whether or not the right of control existed is ordinarily a question of fact for the jury, and is usually arrived at by inference from the terms of the contract, the character of the employment, and all the relevant facts and circumstances. When the facts are in dispute, or more than one inference can be drawn therefrom, the question is for the jury. Andres v. Cox, 223 Mo. App. 1139, 23 S. W. (2d) 1066."

We are satisfied there was ample evidence to go to the jury to determine this issue. The jury found for the plaintiff and this being so, the defendant was not entitled to judgment notwithstanding the verdict based on this issue. It was error for the trial court to grant the motion for judgment notwithstanding the verdict, and so the order and the judgment are reversed.

Ordinarily reversal would reinstate the verdict and judgment based thereon, but with this motion was coupled a motion in the alternative for a new trial.

The trial court did not pass upon the motion for a new trial. In his memorandum opinion the court stated he was satisfied that instructions which he had given to the jury and to which the defendant took exceptions were misstatements of law, but declined to pass upon the effect of such misdirection. The court also declined to pass upon the evidence relative to the alleged contributory negligence of the plaintiff and its effect upon his right to recover. The defendant should be permitted to obtain a ruling of the trial court upon this motion for a new trial, and while this decision carries with it the right to have the verdict and the judgment reinstated, this is done without prejudice to the rights of the defendant to obtain from the trial court a ruling on its motion for a new trial. See Nelson v. Groudahl, 13 N. D. 363, 368, 100 N. W. 1093; State ex rel. Storm v. Hought, 56 N. D. 663, 674, 219 N. W. 213, 217, 58 A.L.R. 186.

The judgment notwithstanding the verdict is vacated, and the case is remanded to the trial court for further proceedings in conformity with this opinion.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.