Lloyd LEE, Plaintiff and Appellant,

v.

AAA NORTH DAKOTA AUTOMOBILE CLUB, Defendant and Respondent.

No. 7373.

Supreme Court of North Dakota.

March 3, 1955.

Lanier, Lanier & Knox, Fargo, for plaintiff and appellant.

Nilles, Oehlert & Nilles, Fargo, for defendant and respondent.

PER CURIAM.

In this action plaintiff sought to recover from the defendant under a contract of employment which he alleged entitled him to commissions upon certain business done by the defendant after plaintiff's employment with the defendant had terminated. In its answer the defendant denied that its contract with the plaintiff obligated it to pay him any commissions after his employment had terminated, alleged that the contract was not in writing; that if the contract had been as alleged by plaintiff it was not to be performed within one year and was unenforceable under the statute of frauds; and alleged full payment to the plaintiff of all compensation due him as an employee of the defendant. The case was tried to a jury in the District Court of Cass County. By agreement of the parties, after defendant's motion for a directed verdict had been denied, a special verdict was submitted to the jury. The question submitted was, "Did the terms of employment or contract of the plaintiff by the defendant provide that plaintiff should receive commissions on renewals after the termination of his employment or contract on March 1st, 1950?" The jury answered this question in the affirmative. Thereafter the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. After hearing upon this motion the trial court granted the motion for judgment notwithstanding the verdict and pursuant to the order of the trial court, judgment in favor of the defendant for the

dismissal of the action was entered. Plaintiff has appealed from the judgment.

The defendant, The North Dakota Automobile Club, is an affiliate of the American Automobile Association. It is engaged in the business of furnishing special services and accident insurance to its members. The services are furnished in consideration of the payment of an annual membership fee: The insurance is optional and may be secured by members upon payment of an additional sum as a premium. The defendant first employed the plaintiff for the purpose of securing members and writing insurance, on December 18, 1945. All agree that under his first contract of employment he was to receive $3 commission on each new membership sold by him, $1 commission on each renewal membership sold by him, $1 commission on each new or renewal of additional insurance sold by him and the sum of $200 a month for expenses. This agreement continued in effect until April 1, 1949.

Sometime in 1948, plaintiff presented to M. J. Connolly, Executive Secretary of the defendant, a proposal for a change in the method of computing his compensation. At that time according to the plaintiff, Mr. Connolly was not interested in making a change but stated that he would discuss the matter later with Mr. R. J. Hughes, president of the defendant. In the early part of 1949, the plaintiff and the defendant, by its officers, Connolly and Hughes, agreed to a new plan of compensation for the plaintiff. The new plan was to become effective April 1, 1949. It is agreed by all parties that the plan was as is set forth in the unsigned memorandum which was received in evidence as plaintiff's exhibit "7". This exhibit is as follows:

"Commission Contract With Lloyd Lee

| For each and every club membership from 1 | to 4,999 | $1.00 |
|---|---|---|
| " " " " " " | " 5,000 " 7,499 | .75 |
| " " " " " " | " 7,499 " 9,999 | .50 |
| " " " " " " | over 10,000 | .25 |
| " " " " | additional insurance policy | .25 |

Credit to be given for every club membership and insurance policy regardless of how acquired. Actual expenses to be paid by the club. Effective date—April 1, 1949."

The plaintiff testified, that at the time the new arrangement was adopted, Mr. Connolly told him that, while he would suffer some immediate reduction in income under the new plan, in the long run it would be to his advantage. Mr. Hughes and Mrs. Connolly testified that plaintiff was told that the new arrangement would be adopted temporarily to see how it would work out. Plaintiff denied that anyone ever told him that the new arrangement was a temporary one. There is, however, no testimony in the record as to what the duration of the agreement was to be and plaintiff's exhibit "7" makes no mention as to the time within which it was to be in effect. Both parties agree that the employment of plaintiff by the defendant was terminable at will by either party, and plaintiff stated that exhibit "7" contained the entire agreement between him and the defendant.

In February 1950, Mr. Connolly notified the plaintiff that defendant would like to have him consider a straight salary of $500 a month with necessary travel expenses. The plaintiff refused to consider the offer and he was then notified that his employment with the defendant would terminate on March 1, 1950. It is conceded by the plaintiff that the defendant was paid in full all compensation due him as of the date of the termination of his employment. It is his contention however that, under his contract of employment, he is entitled to commissions upon all subsequent renewals of club memberships and insurance by all persons who were club members during the

terms of his employment contract and that such commissions will be due him from year to year for as long a time as persons, who were members during the term of his employment, continue to renew such memberships or insurance.

As has been stated, the jury found the contract to be as was contended by the plaintiff.

█ Since this is an appeal from a judgment notwithstanding the verdict, the first question for decision is whether defendant was entitled to a directed verdict at the time the motion for a directed verdict was made. Nicholson v. Roop, N.D., 62 N.W. 2d 473; Weber v. United Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456; Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455. This question in turn is dependent upon whether the evidence, when viewed in the light most favorable to the party against whom the judgment notwithstanding was entered, presents any substantial issues of fact for the jury to determine. Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455; La Bree v. Dakota Tractor & Equipment Co., 69 N.D. 561, 288 N.W. 476.

We have searched the record and find no substantial conflict in the evidence. It is true that there are some conflicts but they are immaterial in so far as a decision in this case is concerned. Defendant's officers testified that they told the plaintiff that the contract of employment which became effective April 1, 1949, was temporary in character. Plaintiff denied that such statements were made to him but stated that the contract could be terminated at will by either party. Certainly if he understood that the contract could be terminated at will, it is immaterial whether he was told it was a temporary agreement or not. Likewise, whether Mr. Connolly told the defendant, that by accepting the contract he would suffer a temporary loss but would gain in the long run, is immaterial. Such a statement would permit an inference that it was contemplated that plaintiff should remain in defendant's employ for a considerable though indefinite period of time, but plaintiff does not contest the right of the defendant to terminate his employment. This statement would not justify an inference that plaintiff would have any claims upon the income of the defendant after his employment had been terminated.

Plaintiff's exhibit "7" was an unsigned written proposal submitted by plaintiff to defendant. It was accepted by the defendant and contains the terms of the contract between the parties. This contract provides that plaintiff shall receive for his compensation a commission on every membership and every insurance policy written by the company. The memorandum contains no provisions as to the duration of the employment and no provisions with respect to renewals of either memberships or insurance. It contains no mention of any agreement that plaintiff could acquire rights in defendant's business which would continue after his employment had ended. Furthermore, plaintiff has testified to no conversations with the officers of the defendant concerning either renewals or a continuing interest in the business of the defendant which might be considered to supplement the written memorandum and thus form a part of the contract. In fact plaintiff testified that the written memorandum constituted the entire contract between the parties.

This memorandum provides that plaintiff shall receive as compensation commissions on all business done by the company without regard to how the business was acquired or whether the business was a renewal of a former membership or insurance contract. If it was to have any effect after the termination of plaintiff's employment, it could only have one effect, and that would be to continue to entitle the plaintiff to commissions on all of the defendant's business from year to year for as long as defendant remained in business. Plaintiff concedes that such a ridiculous result was not intended.

█ We are satisfied, therefore that there was no substantial evidence to support the verdict and that the judgment

notwithstanding the verdict was properly granted and entered. It is therefore unnecessary to decide the other questions raised on this appeal.

The judgment of the district court is affirmed.

BURKE, C. J., and MORRIS, SATHRE and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.